ENTERED
03/05/2008

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

IN RE                               )
                                    )
JIMMIE P. MOYE,                     )   CASE NO. 07-33571-H3-13
                                    )
         Debtor,                    )
                                    )

MEMORANDUM OPINION

The court has held a combined hearing on the "Debtor's Objection to Claim of Countrywide Home Loans, Inc." filed by Debtor (Docket No. 32), and the "Application for Approval of Fees Under Fixed Fee Agreement" filed by Countrywide Home Loans, Inc. (Docket No. 55). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Jimmie P. Moye ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on June 1, 2007. William E. Heitkamp is the Chapter 13 Trustee. The confirmation hearing on Debtor's plan in the instant case has not yet occurred.

On January 22, 1999, Debtor executed a note, in the original principal amount of $61,853.00, payable to Countrywide Home Loans, Inc. ("Countrywide").  The note provides in pertinent part:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

(Countrywide Exhibit 2).

On June 29, 2007, Countrywide filed a proof of claim in the instant case.  The initial proof of claim asserted, <u>inter alia</u>, a prepetition arrearage of $15,369.70, comprised of $6,255.20 in unpaid monthly payments, an escrow shortage of $6,081.81, inspection fees of $138.00, postpetition bankruptcy attorney fees of $200.00, and prepetition attorney fees of $2,694.69.  (Claim No. 2-1).

Debtor filed the instant objection to claim on September 25, 2007.  In the instant objection, Debtor objects to the amounts of the escrow shortage, inspection fees, postpetition bankruptcy attorney fees, and prepetition attorney fees.

Countrywide amended its proof of claim on February 18, 2008, and again on February 21, 2008, one day before the hearing on the instant claim objection.  In the amended proof of claim dated February 21, 2008, Countrywide asserts prepetition arrearage of $15,393.31, comprised of $6,255.20 in unpaid monthly

payments, an escrow shortage of $5,893.42, postpetition
bankruptcy attorney fees of $550.00, and prepetition attorney
fees of $2,694.69.  (Claim No. 2-3).  Counsel for Countrywide
announced that Countrywide is no longer seeking allowance of
inspection fees, and that the escrow shortage amount has been
reduced to reflect the amounts actually paid for 2007 taxes.  The
remaining dispute in the instant claim objection is whether
Countrywide's prepetition attorney fees are to be allowed.

        Debtor has stipulated that the fees are reasonable.
Debtor contends that the only question presented is whether
Countrywide can prove that the fees and expenses were actually
incurred.

        At the hearing on the instant claim objection,
Countrywide presented an invoice from its attorneys, Barrett
Burke Wilson Castle Daffin and Frappier, L.L.P. ("BBWCDF").  The
invoice shows that BBWCDF billed attorney fees, together with
costs for posting, filing, and service of the notice of sale, and
costs for a title search, for a foreclosure sale scheduled
November 7, 2006.  BBWCDF also billed additional attorney fees
together with costs for posting, filing, and service of the
notice of sale, and costs for an update of the title search, for
rescheduled foreclosure sales scheduled for December 5, 2006,
January 2, 2007, March 6, 2007, April 3, 2007, and May 1, 2007.
For each of the scheduled sales, there is a charge of $35.00 for

posting notice of sale, a charge of $3.00 for filing a notice of sale, and a charge of $2.79 for serving notice of sale. The total of attorney fees and costs billed with respect to the first scheduled sale was $769.40.[1]  The attorney fees and costs billed for each of the five subsequent rescheduled sales was $380.10,[2] for a total for the rescheduled sales of $1,900.50.[3] (Countrywide Exhibit 9).

      Countrywide additionally presented a billing statement, from BBWCDF's computer system, indicating that Countrywide paid the $2,694.69 in prepetition fees and expenses, and $550.00 in postpetition fees, to BBWCDF.  (Countrywide Exhibit 8).

      David Seybold, the general counsel of BBWCDF, testified credibly and competently that BBWCDF's agreement with Countrywide calls for BBWCDF to be paid a flat fee of $550.00 to the initially prepare the file, review the file, prepare an acceleration letter, and prepare a notice of sale.  He testified that, for rescheduled sales, the firm charges a $250.00 flat fee,

---

[1]This amount consists of $550.00 in attorney fees, plus $35.00 for posting notice of sale, $3.00 for filing notice of sale, $2.79 for service of the notice of sale, and $178.61 for an initial title search.

[2]This amount consists of $250.00 in attorney fees, plus plus $35.00 for posting notice of sale, $3.00 for filing notice of sale, $2.79 for service of the notice of sale, and $89.31 for an updated title search.

[3]The proof of claim additionally includes $24.79 in additional charges not directly attributable to one of the six scheduled foreclosure sales.

because the file is already open, and needs less review.  He
testified that all of the services rendered by BBWCDF were
necessary to pursuit of the prepetition foreclosure actions.  He
testified that the fees charged were appropriate for the services
rendered.  He testified that the time spent was necessary because
an attorney must review and show compliance with federal and
state statutes.  He testified that an attorney must verify that
the debt is the debt owed by the borrower listed in the referral
from the client, match the borrower against the deed of trust,
review the deed of trust for any special provisions or
protections for the borrower, prepare a letter advising the
borrower of rights under the Fair Debt Collection Practices Act,
review and prepare the notice of sale, and make sure that each
obligor is provided with proper acceleration notice and notice of
sale.  He testified that BBWCDF reviews documents including
notice of default and breach letters to ensure compliance, and
determines whether a borrower has failed to cure any default.

        Seybold testified that, with respect to the expenses,
BBWCDF billed $35.00 for posting notice of sale, $3.00 for filing
notice of sale, and $2.79 for service of the notice of sale only
if BBWCDF posted, filed, and served the notice of sale.  He
testified that the firm's practice is for the substitute trustee
to file the notice of sale, post it at the courthouse, and
deliver a notice of sale.

At the hearing on the instant claim objection, the questions propounded to witnesses by Debtor's counsel centered upon whether BBWCDF had provided to Debtor's counsel copies of invoices and receipts for the $35.00 expenses for posting notice of sale, $3.00 expenses for filing notice of sale, and $2.79 for service of notice of sale. Roy Lovell, the billing manager for BBWCDF, testified that he had some documents. Debtor's counsel asserted that she had made requests for these documents. She stated, however, that she made no formal discovery requests.

Cynthia Ludwig, an employee of Countrywide, testified that Debtor was offered workout plans as part of a loss mitigation strategy adopted by Countrywide, in consultation with the United States Veterans' Administration. She testified that the various foreclosure sales were rescheduled as a result of the workout negotiations.

Ludwig testified that Countrywide deals with several law firms for pre-bankruptcy foreclosure services. She testified that Countrywide pays flat rates to all of the law firms it hires for foreclosure services. She testified that no firms are hired on an hourly basis unless there are escalated issues or extended litigation. She testified that the fee paid by Countrywide to BBWCDF in the instant case is within the range of fees paid to law firms for foreclosures in other cases.

Countrywide filed the instant application for allowance of the $550.00 postpetition bankruptcy attorney fees on February 15, 2008 (Docket No. 55). Seybold testified that BBWCDF negotiated a flat fee of $200.00 for preparation of proofs of claim for Countrywide, and negotiated a flat fee of $350.00 for representation of Countrywide with respect to claim objections.

With respect to the postpetition fees, Ludwig testified that Countrywide engages attorneys on a flat fee to perform services in bankruptcy cases. She testified that Countrywide pays the initial flat fee of $200.00 for counsel to review the plan filed by the debtor, review any prior filings by the debtor, and followup on any proceedings through confirmation. She testified that Countrywide pays its attorneys a $350.00 flat fee to defend an objection to its claim. She testified that the flat fees in the instant case are within the range of agreed flat fees for services rendered in other cases.

Richard Kelley, an attorney who has had a regular practice in agricultural, residential, and commercial real property foreclosure since 1992, testified that he has had responsibility for bidding for foreclosure work for institutions, including those in the farm credit system, commercial banks, mortgage companies, and insurance companies. He testified that the institutions who were his clients requested fixed fee bids. He testified that it is customary in Texas for law firms to bid

7

for foreclosure work on a fixed fee basis.

Conclusions of Law

The instant claim objection presents the court with the difficult task of protecting the Debtor and the creditors of the Debtor from overzealous litigation practices by both counsel for a mortgage creditor and counsel for a debtor.  Based on the claim objection as filed and the stipulation of Debtor's counsel that the legal fees are reasonable, the amount in controversy at the time of filing of the claim objection was $869.96, consisting of six sets of notices filed, posted, and served, and a title search conducted and updated.

This court is not writing on a blank slate with respect to the issues raised in the instant claim objection.  BBWCDF is a firm which represents mortgage servicers, and files approximately 30,000 pleadings per year in bankruptcy cases.  See In re Allen, Case No. 06-60121-V-13 (Slip Op., June 18, 2007).  The court has noted that BBWCDF has had a practice of aggressively seeking to shift fees from its clients to consumer debtors.  See In re Porcheddu, 338 B.R. 729 (Bankr. S.D. Tex. 2006).

Moreover, there has been extensive litigation regarding fees assessed by mortgage servicers.  Much of this litigation has involved the assessment of fees postpetition, and is therefore inapposite to the question of whether prepetition fees are allowed in the instant case.  See, e.g., In re Padilla, 379 B.R.

643 (Bankr. S.D. Tex. 2007); In re Sanchez, 372 B.R. 289 (Bankr. S.D. Tex. 2007); In re Campbell, 361 B.R. 831 (Bankr. S.D. Tex. 2007); In re Valdez, 324 B.R. 296 (Bankr. S.D. Tex. 2005).

The court additionally notes that Debtor's counsel in the instant case has attended a "bankruptcy boot camp," whose advertised goals are to "generate economic benefits for consumer debtors and legal fees for their attorneys" using "every available consumer protection statute...including the FDCPA, TILA, UDAP, FCRA, ECOA, the automatic stay and the discharge injunction." See "Max Gardner's Bankruptcy Boot Camps" (2008), http://www.maxbankruptcybootcamp.com/images/2008BootCamp.pdf.

When a claim objection is filed, the bankruptcy court is required to determine the amount of the claim, and allow the claim, except, inter alia, to the extent that the claim is unenforceable against the Debtor. 11 U.S.C. § 502(b)(1).

If the claim is oversecured, the creditor is allowed reasonable postpetition fees, costs, or charges provided for under the agreement. 11 U.S.C. § 506(b).

The party filing the claim is presumed to have made a prima facie case against the debtor's assets. The objecting party has the burden to produce evidence rebutting the presumption raised by the proof of claim. If such evidence is produced, the party filing the claim has the burden to prove by a preponderance of the evidence the validity of the claim. The

claiming party, through this process, bears the ultimate burden
of proof. In re Fidelity Holding Company, Ltd., 837 F.2d 696,
698 (5th Cir. 1988); In re Missionary Baptist Foundation of
America, 818 F.2d 1135, 1143-1144 (5th Cir. 1987).

In the instant case, the note provides for allowance of
Countrywide's costs and expenses incurred in enforcing the note,
including reasonable attorneys' fees.

Texas law governs whether the fees charged by an
attorney are reasonable. Under Texas law, factors that may be
considered in determining the reasonableness of attorneys fees
include: (1) the time and labor involved, the novelty and
difficulty of the questions involved, and the skill required to
perform the legal services properly; (2) the likelihood that the
acceptance of the particular employment will preclude other
employment by the lawyer; (3) the fee customarily charged in the
locality for similar legal services; (4) the amount involved and
the results obtained; (5) the time limitations imposed by the
client or the circumstances; (6) the nature and length of the
professional relationship with the client; (7) the experience,
reputation, and ability of the lawyer or lawyers performing the
services; and (8) whether the fee is fixed or contingent. Arthur
Andersen & Co. v. Perry Equip. Co., 945 S.W.2d 812 (Tex. 1997).
The court must consider whether the action taken by the creditor
was reasonable, and whether the fee is reasonable for the service

10

rendered.  In re Valdez, 324 B.R. 296 (Bankr. S.D. Tex. 2005).

      With respect to the fees of a consumer debtor's counsel, the court has noted that the practice of law responds to a different market and a different economic reality than that found in commercial litigation or business bankruptcy.  In re Wilkins, Case No. 93-45078-H5-13 (Slip Op., June 14, 1994).  The court's consideration of this marketplace led the court to adopt first a threshold fee, then a truncated form of fee application.  See In re Wilson, Case No. 02-41399-H3-13 (Slip Op., April 10, 2003), and cases cited therein.  Subsequently, the court adopted a procedure by which, at the beginning of a case, a debtor's counsel could seek allowance of a fixed fee at the inception of the case, based on an agreement to provide a specified range of services.  See General Order 2004-5; In re Chapter 13 Fee Applications, Misc. Case No. 06-305 (Slip Op., October 3, 2006).

      The standards regarding the allowance of fees to an oversecured creditor's counsel differ slightly from those applicable to the fees of a debtor's counsel.  However, the rationale for allowance of a fixed fee for creditors' counsel as well as for debtors' counsel is persuasive, in light of the volume of cases and the likelihood that, as in the instant case, the amount in controversy may be small.

      In the instant case, Debtor has stipulated to the reasonableness of Countrywide's legal fees.  The court has

independently considered the fees and is of the opinion that the fees are reasonable.  With respect to Countrywide's prepetition expenses, in the instant case, in the absence of controverting evidence, the court finds persuasive BBWCDF's billing statement showing that the expenses were paid.

With respect to Countrywide's postpetition legal fees, there is a split of authority as to whether legal fees are allowable for preparation of a proof of claim.  The courts holding that fees are allowable, In re Powe, 278 B.R. 539 (Bankr. S.D. Ala. 2002); and In re LeMarquis Assoc., 65 B.R. 719 (Bankr. E.D. Ca. 1986). rev'd on other grounds 81 B.R. 576 (9th Cir. BAP 1987) held that preparing a proof of claim requires the examination of relevant law.  The courts holding that fees are not allowable, In re Staggie, 255 B.R. 48 (Bankr. D. Idaho 2000); In re Banks, 31 B.R. 173 (Bankr. N.D. Ala. 1982); and In re Madison, 337 B.R. 99 (Bankr. N.D. Miss. 2006) held that the filing of a proof of claim is a ministerial act for which attorney services are not necessary.

In the instant case, in light of the testimony as to the services performed, the court concludes that a $200.00 flat fee for preparation of the proof of claim and the additional services rendered is reasonable.  Likewise, with respect to the defense of the claim objection, in light of the testimony as to the services performed, the court finds that the $350.00 flat fee

12

sought is reasonable.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on March 5, 2008.


_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE